**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **A.C., a minor, through his father,** | ) | |
| **Buster Carter, as next friend,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15 C 7711** |
| | ) | |
| **TAURUS FLAVORS, INC.,** | ) | |
| **MARIAN A. McAFEE,** | ) | |
| **MORE FLAVORS INC.,** | ) | |
| **and DOES 1-5,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

A.C., a minor, through his father, Buster Carter, has filed suit seeking injunctive

relief under Title III of the Americans with Disabilities Act, 42 U.S.C. §12181, specifically

an order directing Taurus Flavors, Inc., Marian A. McAfee, and More Flavors Inc. to

remove or correct architectural barriers that limit access to Taurus Flavors Restaurant in

Dolton, Illinois. All of the defendants have moved for summary judgment.

**Background**

Taurus has a trademark license agreement with More Flavors and McAfee for

use of Taurus's name and logo for a restaurant McAfee owns located at 115 East 75th

Street in Chicago. Taurus Mem. in Support of Mot. for Summ. J. at 2, ¶ 6. McAfee is

the owner of More Flavors, which also owns and operates the Taurus Flavors restaurant

at 770 East 142nd Street in Dolton, which the Court will refer to as the Dolton

restaurant. McAfee Mem. in Support of Mot. for Summ. J. at 2, ¶ 7. The Dolton

restaurant is a place of public accommodation that is covered by Title III of the ADA.

A.C. visited the Dolton restaurant during the months of June, July, and August

2015. Pl.'s Ex. G (Carter Aff.) ¶ 7. A.C., who gets around by way of a wheelchair,

contends that he experienced serious difficulty accessing the at the Dolton restaurant

due to several architectural barriers on the property. Second Am. Compl. ¶¶ 4, 14.

A.C. says that he could not access the facilities because there was no handicap

parking; there were potholes and indentions in the parking lot; and the door knob of the

restaurant's front door required tight grasping that he could not perform. Carter Aff. ¶ 8.

A.C. alleges that he intends to visit the restaurant in the future but fears that he will

continue to have trouble accessing the restaurant's facilities. Second Am. Compl. ¶¶

15-16.

Taurus has moved for summary judgment, arguing that it cannot be held liable

under the ADA because it is neither the owner nor the operator of the Dolton restaurant.

More Flavors and McAfee have also moved for summary judgment, arguing that A.C.

cannot establish an entitlement to relief under the ADA.

## Discussion

Summary judgment is appropriate if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court views the evidence in the light

most favorable to the nonmoving party and draws reasonable inferences from the

evidence in that party's favor.  *Bluestein v. Cent. Wis. Anesthesiology, S.C.*, 769 F.3d 944, 950 (7th Cir. 2014).

Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182.  Discrimination under Title III includes "a failure to remove architectural barriers . . . where such removal is readily achievable."  *Id.* § 12182(b)(2)(A)(iv).  The statute states that injunctive relief is available to "any person who is being subjected to discrimination on the basis of disability in violation [of Title III] or who has reasonable grounds for believing that such person is about to be subjected to discrimination."  *Id.* § 12188(a)(1).  In the case of a violation of section 12182(b)(2)(A)(iv), "injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . ."  *Id.* § 12188(a)(2).

## A.    Taurus's motion for summary judgment and sanctions

Taurus argues that no reasonable fact finder could find that it violated the ADA because A.C. cannot show that it "owns, leases (or leases to), or operates" the Dolton restaurant.  *Id.* § 12182(a).  Taurus says that the only evidence A.C. presents on this point is a 2003 trademark license agreement between Taurus and McAfee for use of Taurus's trademark at a different property, specifically the restaurant at 115 East 75th Street in Chicago.  Taurus argues that this is insufficient to permit a finding that it has

any authority regarding the Dolton restaurant, let alone that it owns or operates that restaurant.

A.C., on the other hand, argues that the agreement shows or supports the proposition that Taurus and McAfee are in a franchisor-franchisee relationship that spans several properties, including the Dolton restaurant. According to A.C., Taurus and McAfee are "two peas in a pod, especially given the fact that the [Dolton] property shines brightly in the regalia, signs, colors, and marks of Taurus Flavors." Pl.'s Resp. to Taurus Mot. for Summ. J. at 2. A.C. contends that terms in the licensing agreement tend to show that Taurus has control over the Dolton restaurant.

Contract interpretation is, as a general rule, a question of law. "If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Thompson v. Gordon*, 241 Ill. 2d 428, 441, 948 N.E.2d 39, 47 (2011). The terms in the 2003 franchise agreement between Taurus and McAfee unambiguously state that the agreement is meant to govern the relationship between Taurus and McAfee regarding More Flavors #3 d/b/a Taurus Flavors, which is the restaurant on 75th Street in Chicago. The introductory paragraph of the agreement states: "This Agreement, between Taurus Flavors, Corporation at the above address, has agreed to permit **MORE FLAVORS #3** located inside Park Manor Bowl, 115 East 75th St., Chicago, Illinois **ONLY** do business as Taurus Flavors." Taurus Ex. 3 (emphasis in original). This paragraph of the agreement is rather inartfully written, but it makes it clear that the agreement concerns the 75th Street restaurant, not the Dolton restaurant. And despite A.C.'s contentions otherwise, one cannot reasonably infer from

4

this agreement that Taurus must have a similar agreement with More Flavors or McAfee regarding the restaurant in Dolton.

Even if one could properly infer that Taurus and the other defendants have a similar franchise agreement for the Dolton restaurant, the terms of the agreement do not grant Taurus authority over structural modifications to the restaurant. That, it appears, is the critical factor in determining the liability of a franchisor under Title III of the ADA. Though the Seventh Circuit has not addressed the point, the several courts of appeal have concluded that the "relevant inquiry . . . is whether [the franchisor] specifically controls the modification of the franchises to improve their accessibility to the disabled." *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995); *see also Celeste v. E. Meadow Union Free Sch. Dist.,* 373 F. App'x 85, 91 (2d Cir. 2010) (relying on *Neff* to adopt the Title III definition of "operates" to include "control."); *Lentini v. Calif. Center for the Arts, Escondido*, 370 F.3d 837, 849 (9th Cir. 2004) (same); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3rd Cir. 2002) (same); *Pona v. Cecil Whittaker's, Inc.*,155 F.3d 1034, 1036 (8th Cir. 1998) (same).

Contrary to A.C.'s assertions, nothing in the franchise agreement reasonably would permit a finding that Taurus has control over the structural barriers that are the subject of this suit. A.C. points to three paragraphs in the agreement. First, paragraph two states that the franchisee "shall pay taxes [and the] Corporate Office in Chicago, Illinois will monitor all taxes." Taurus Ex. 3, ¶ 2. This paragraph has nothing to do with the franchisee's physical facilities; it involves payment of taxes. Second, paragraph eight states that "[b]usiness at all times will be performed according to the Corporation rules." *Id.*, ¶ 8. But this paragraph does not say that Taurus has control of the

franchisee's facilities, and there is no evidence that the "Corporation rules" have provisions concerning those facilities. Third, paragraph six states that "[t]o monitor all activities, a supervisor will be established. Supervisor's responsibility, if not carried out effectively, will be taken over by the Corporation until further notice." *Id.*, ¶ 6. Contrary to A.C.'s contention, this paragraph does not suggest that Taurus has a "management veto over how More Flavors [Inc.] is run as a business," Pl.'s Resp. to Taurus Mot. for Summ. J. at 1, let alone control over accessibility issues.

For these reasons, the Court concludes that Taurus is entitled to summary judgment.

Taurus also asks the Court to award it attorney's fees against A.C. and his counsel Nicholas Kefalos for filing what Taurus terms an "abusive and harassing lawsuit" against Taurus. Taurus Mem. in Support of Mot. for Summ. J. at 6-7. Taurus notes that A.C., via Kefalos, has filed four other lawsuits in this district relating to Title III ADA violations. It argues that these suits support its assertion that A.C. is using lawsuits "as weapons to extort honest [d]efendants" into settling. *Id.* at 8. Taurus contends that A.C. should be required to pay Taurus's attorney's fees for "defending this baseless and ill-intentioned suit." *Id.*

In support of its request to shift fees, Taurus relies on Federal Rule of Civil Procedure 11 with regard to Kefalos and the ADA's fee-shifting provision with regard to A.C. *See* 42 U.S.C. § 12205. Under both provisions, the key issue is whether the claim was frivolous. Section 12205 allows a court to award a reasonable attorney's fee to a prevailing party in an ADA case. A fee award to a prevailing defendant is appropriate only when the suit is brought in bad faith or when it is "frivolous, unreasonable, or

6

without foundation." *Adkins v. Briggs & Stratton Corp.*, 159 F.3d 306, 307 (7th Cir. 1998). Rule 11 provides that "[b]y presenting to the court [a paper] . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" it is "not being presented for an improper purpose, such as to harass," and the legal arguments it presents are "nonfrivolous." Fed. R. Civ. P. 11(b)(1), (2). If an attorney breaches this duty, the court may impose an appropriate sanction. *Id.* 11(c)(1).

A "judge can sanction a litigant for filing a frivolous suit or claim regardless of the motives for such filing, and in deciding whether to sanction such a litigant he can take into account a history of frivolous litigation." *Reed v. Great Lakes Cos.*, 330 F.3d 931, 936 (7th Cir. 2003). In *Reed*, the court overturned a district court's decision to impose sanctions on a litigant who had twenty-five former employers and brought thirteen employment discrimination lawsuits. *Id.* The court stated that none of the plaintiff's "previous cases has been adjudged frivolous. Nor did the district judge find that any of them had been frivolous." *Id.* at 937. It concluded that the district court's sanctions order "appears to rest on nothing more solid than the judge's speculation that [the plaintiff] is an extortionist. The speculation is too thin to sustain that order." *Id.*

From what the Court can determine, A.C. has filed four other complaints in this district alleging violations of Title III of the ADA. *See* Taurus Ex. 5. Taurus has offered the Court no basis to believe that any these lawsuits were frivolous. That leaves this case. The Court has concluded that A.C.'s claim against Taurus cannot be sustained. But there was enough there to permit A.C. and his counsel to file and proceed with the suit. This included the evidence of the ADA violations; the Taurus Flavors name on the

7

restaurant; and the franchise agreement regarding the 75th Street restaurant, which said little on its face but suggested that Taurus Flavors might have corporate rules that gave it the requisite control over the Dolton restaurant as well. The Court concludes that Taurus has not shown that A.C.'s claim against it was frivolous.

**B.      More Flavors and McAfee's motion for summary judgment and sanctions**

More Flavors and McAfee argue that they are entitled to summary judgment because A.C. cannot establish that he is disabled, that he visited the Dolton restaurant, that he requested a reasonable accommodation, that the restaurant has any structural barriers limiting access to persons with disabilities, or that the alleged barriers still exist. McAfee Mem. in Support of Mot. for Summ. J. at 4-5.

First, the evidence supports a finding that A.C. is a disabled individual. A person is disabled under the ADA if he: "(A) has a mental or physical impairment that substantially limits a major life activity; (B) has a record of such an impairment; or (C) is regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). Major life activities include "but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). A.C.'s father, Buster Carter, has stated in an affidavit that A.C. "gets around with a wheelchair" or by Carter assisting or carrying him. Carter Aff. ¶ 6. Carter has further explained that A.C. is only able to walk for short distances at a time because his right leg is longer than his left leg. *Id.* ¶¶ 2, 5. Carter also states that A.C. has a malformed right hand, which renders him unable to grasp or pull objects using his right arm and hand. *Id.* ¶ 4. Carter's affidavit is sufficient to permit a finding that A.C.'s

physical impairments substantially limit, if nothing else, his ability to walk and to lift or grasp.

Second, the evidence supports a finding that A.C. visited the Dolton restaurant. Carter states in his affidavit that A.C. visited the restaurant during the months of June, July, and August 2015. *Id.* ¶ 7. More Flavors argues in its reply that Carter's affidavit does not constitute credible evidence because it is self-serving. McAfee Reply at 4. This is not a basis to disregard the affidavit, the contents of which are unquestionably admissible. As the Seventh Circuit has repeatedly stated, "[d]eposition testimony, affidavits . . . and other written statements by their nature are self-serving . . . . [T]he term 'selfserving' [sic] must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013).

Third, More Flavors does not cite to any legal authority that supports its contention that Title III requires a person with a disability to request repairs or a reasonable accommodation before filing a suit for injunctive relief. Moreover, nothing in the language of Title III suggests that there is such a prerequisite.

Fourth, the record supports a finding that the Dolton restaurant had structural barriers at the times A.C. visited the location. Carter states in his affidavit that A.C. could not access the facilities at the Dolton restaurant because there was no handicap accessible parking; there were potholes and indentions in the parking lot; and the door knob of the restaurant required tight grasping. Carter Aff. ¶ 8. Additionally, in A.C.'s initial Rule 26(a)(1) disclosure to the defendants, he provided information regarding a report that his counsel commissioned that detailed the ADA violations at the Dolton

restaurant.  A.C. stated in his disclosure that "John Carter [of] Midwest ADA Disability

Compliance Consultants [] will have knowledge relative to his firm's Site Survey & ADA

Evaluation, dated August 11, 2015, relating to the property located at 770 E. 142nd St.;

Dolton, IL 60473."  McAfee Ex. 6, ¶ 1(b).  The report, in turn, states that a Midwest

employee visited the restaurant to determine whether the restaurant was ADA compliant

according to the "[m]ethodology employed by the Americans With Disabilities Act (ADA)

Accessibility Guidelines for Building and Facilities (ADAAG), part 36 Standards for

Accessible Design."  Pl.'s Ex. B (Midwest Report) at 3.  The Midwest Report found

several ADA violations at the restaurant relating to its parking lot, parking spaces, and

signage.  *Id.* at 5.

Fifth, More Flavors' contention that A.C.'s evidence of ADA noncompliance is

stale is insufficient to entitle it to summary judgment.  More Flavors says that A.C. has

produced only "a series of undated photos included with a self-serving report produced

in discovery . . . .  Frankly, these outdated photos and report, probably produced for the

purpose of filing this lawsuit, do not reflect the actual state of Movants' parking lot,

which is ADA compliant."  McAfee Mem. in Support of Mot. for Summ. J. at 5.  But More

Flavors' contention about the "actual state" of the Dolton restaurant parking lot is, itself,

supported only a single undated and unauthenticated photo.  Thus, More Flavors has

provided the Court no basis to determine the current "actual state" of the parking lot.

In any event, A.C.'s response to the motion for summary judgment includes both

pre-suit and post-suit evidence regarding noncompliance at the Dolton restaurant, all of

it properly authenticated.  More Flavors does not address this evidence in its reply,

other than to make a cursory and unsupported contention that these are "self-serving

[and] unverified reports" that "are neither timely nor sufficient."  McAfee Reply at 1.

Even if this argument were sufficiently developed, which it is not, it would lack merit.

The "self-serving" label is not a basis to ignore otherwise admissible evidence, and the

post-suit ADA compliance report accompanying A.C.'s response to the motion for

summary judgment is sufficiently verified.  *See* Pl.'s Ex. C (Wellman Aff.).

McAfee's argument about untimeliness also lacks merit.  Starting with Buster

Carter's affidavit, it is true that the *affidavit* was provided as part of A.C.'s summary

judgment response.  But that does not make Carter's *statements* untimely or otherwise

inadmissible.  Taurus attached to its summary judgment motion A.C.'s amended Rule

26(a)(1) disclosures, which identified Carter as a person with knowledge of discoverable

facts and said that he has "information relating to Plaintiff's disability, physical condition,

and visits of Defendants' real property."  Taurus Ex. 6, ¶ 1(a).  This was a sufficient

disclosure to permit Carter to testify on these points, and if defendants wanted to know

more about the details before moving for summary judgment, they should have taken

Carter's deposition—which they evidently chose not to do.

Second, the Court disagrees with the suggestion that A.C. did not make timely

disclosures regarding his claimed disability.  As just noted, A.C.'s amended Rule

26(a)(1) disclosure said that Carter would have information about this; defendants could

have taken his deposition, or A.C.'s for that matter, if they wanted to know more.  More

Flavors and McAfee also say that A.C. hid the ball with regard to medical records about

his disability.  That is untrue:  A.C.'s responses to defendants' document requests said

that he did not have medical records but that they could be obtained from Comer

Children's Hospital.  Taurus Ex. 4, ¶ 7.  That is a well-known Chicago institution, and

defendants could have subpoenaed the hospital for A.C.'s records if they actually

thought they needed them.[1]  Defendants' Rule 34 production request required A.C. only

to produce materials in his possession, custody, or control, not to go out and gather

records from an unrelated party like a hospital.  In any event, More Flavors and McAfee

offer no authority to support the proposition that medical records are always required to

establish a disability within the meaning of the ADA.[2]

Third, the Court disagrees with the suggestion that A.C.'s expert reports were

untimely.  Specifically, in his initial Rule 26(a)(1) disclosure, A.C. identified John Carter,

the author of the Midwest report.  McAfee Ex. 6, ¶ 1(b).  Additionally, A.C. produced

both the Midwest Report and a post-suit report from Ramp-UP Disability Consulting,

LLC in response to defendants' discovery requests.  Taurus Ex. 4, ¶ 1.

More Flavors and McAfee also provide no competent evidence to rebut A.C.'s

evidence regarding ADA noncompliance at the Dolton restaurant.  They argue that

A.C.'s expert reports have undated photos and that any structural barriers shown in

those photos "do not reflect the actual state of [the] parking lot" today.  McAfee Mem. in

Support of Mot. for Summ. J. at 5.  As noted earlier, however, the only evidence More

Flavors and McAfee provided with their motion was their own undated and

unauthenticated photo.  *Id.* at Ex. 4.  Further, in their reply, More Flavors and McAfee

---

[1] A Google search for "Comer Childrens Hospital" reveals, in less than a second's time, an address of 5721 S. Maryland Ave., Chicago, IL 60637.

[2] Defendants say that A.C. did not respond, or did not respond fully, to their interrogatories.  McAfee Ex. 7.  But they have not provided the Court with the interrogatories and whatever responses were served so that the Court can assess this for itself and determine whether any non-response or inadequate response should have an impact on the Court's consideration of any of A.C.'s evidence.  The Court thus disregards defendants' contention as unsupported.

did not address the evidence that A.C. discussed in his response and thus likely have forfeited the point for purposes of summary judgment. That aside, A.C.'s evidence is sufficient to show that there is a genuine dispute of material fact. More Flavors and McAfee are not entitled to summary judgment.

More Flavors and McAfee also ask the Court to impose sanctions on A.C., arguing that the lawsuit is abusive and intended to harass the defendants. The Court overrules this request. A.C.'s claim against More Flavors and McAfee has survived their motion for summary judgment, and thus there is no basis to say at this point that the claim is frivolous.

### Conclusion

For the foregoing reasons, the Court grants defendant Taurus Flavors Inc.'s motion for summary judgment [dkt. no. 44] and denies defendants More Flavors and Marian McAfee's motion for summary judgment [dkt. no. 49]. The case is set for a status hearing on February 21, 2017 at 9:30 a.m. for the purpose of setting a trial date on plaintiff's claims against More Flavors and McAfee. Trial counsel are directed to appear.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 7, 2017